IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID BRIAN RUSSELL,                )
                                    )
            Plaintiff,              )
                                    )
    v.                              ) Civil Action No. 11-104J
                                    )
MICHAEL J. ASTRUE,                  )
COMMISSIONER OF                     )
SOCIAL SECURITY,                    )
                                    )
            Defendant.              )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 30th day of July, 2012, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 12) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed his pending applications[1] for disability insurance benefits and supplemental security income on May 11, 2009, alleging a disability onset date of April 24, 2009, due to headaches, seizures and depression. Plaintiff's applications were denied initially. At plaintiff's request an ALJ held a video hearing on July 28, 2010, at which plaintiff, represented by counsel, appeared and testified. On August 20, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On March 2, 2011, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 43 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). He has a high school education and past relevant work experience as a meat cutter and delivery driver, but he has not engaged in any substantial gainful activity since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ

---

[1] For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on his alleged onset date and had acquired sufficient coverage to remain insured through March 31, 2013.

concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of seizures (controlled by medication) and depression, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform simple, unskilled light work but with certain restrictions recognizing the limiting effects of his impairments, specifically, he cannot drive and cannot have exposure to dangerous equipment or to extreme heat and cold. (R. 14). A vocational expert identified numerous categories of jobs which plaintiff could perform based upon his age, education, work experience and residual functional capacity, including cashier and cleaner. Relying on the vocational expert's testimony, the ALJ found that while plaintiff cannot perform his past relevant work, he is capable of making an adjustment to work which exists in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but

cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[2] for determining whether a claimant is under a disability. 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises the following challenges to the ALJ's findings: (1) the ALJ erred at step 3 by finding that plaintiff's impairments do not meet the criteria of any of the listed impairments; (2) the ALJ improperly assessed plaintiff's residual functional capacity; and, (3) the ALJ failed to consider all of plaintiff's impairments in combination. Upon review, the court is satisfied that all of the ALJ's findings are supported by substantial evidence.

---

[2] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §§404.1520a and 416.920a.

First, the court is satisfied that the ALJ's step 3 finding is supported by substantial evidence. At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. <u>Burnett v. Commissioner of Social Security Administration</u>, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. <u>Knepp v. Apfel</u>, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §§404.1520(d) and 416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." <u>Burnett</u>, 220 F.3d at 119.

Here, as required, the ALJ identified the relevant listed impairments that compare with plaintiff's seizure disorder (Listings 11.02 and 11.03) and depression (Listing 12.04) and adequately explained why plaintiff's impairments, alone or in combination, do not meet or equal the severity of those listed impairments. (R. 12-14); <u>see</u> <u>Burnett</u>, 220 F.3d at 120, n.2. In particular, as to plaintiff's seizure disorder, the ALJ noted that plaintiff controls his seizures through medication. (R. 12). As to plaintiff's depression, the ALJ found that plaintiff failed to meet either the "B" or the "C" criteria of Listing 12.04. (12-14).

The ALJ's step 3 finding is well-supported by the medical evidence. In finding that plaintiff's seizure disorder does not meet Listing 11.02 or 11.03, the ALJ noted that plaintiff had

reported in October of 2009 to Dr. Lukacs, a neurological consultant, that he had been seizure free since 2005, and Dr. Lukacs noted that plaintiff's seizure disorder was clinically stable.  Although plaintiff contests the ALJ's statement regarding the frequency of seizures by asserting that he did not report all of his seizures because he feared losing his driver's license, the relevant listings are not met unless a claimant can show a typical seizure pattern "occurring more frequently than once a month" (Listing 11.02) or "occurring more frequently than once weekly" (Listing 11.03), and there is nothing in the record to suggest that plaintiff had seizures at that frequency. To the contrary, as the ALJ noted, on physical examination plaintiff did not show signs of having seizures and multiple EEG's revealed no brain activity consistent with epilepsy or similar trauma.  (R. 15).

Substantial evidence likewise supports the ALJ's finding that plaintiff does not meet Listing 12.04 for depression. The ALJ more than adequately explained his conclusion that plaintiff failed to meet either the "B" or the "C" criteria of Listing 12.04 and his conclusions are supported by the objective medical evidence as well as the fact that no medical source found that plaintiff meets the requisite criteria. (R. 12-14). As the required level of severity is met only when the requirements in both A and B of the listings are satisfied, or when the "C" criteria of those listings are met, the ALJ correctly concluded that plaintiff does not meet Listing 12.04.

To the extent plaintiff contends that the ALJ failed to consider a number of GAF scores in determining whether plaintiff meets Listing 12.04, this argument is not well-taken. The GAF score considers psychological, social and occupational functioning on a hypothetical continuum of mental health. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) (4th ed. 1994). While the use of the GAF scale is not endorsed by the Social Security Administration because its scores do not have a direct correlation to the disability requirements and standards of the Act, the ALJ's findings at step 3 that plaintiff has moderate difficulties in social functioning and in concentration, persistence and pace are consistent with the clinical GAF ratings found by all of the medical sources, the lowest of which are ratings of 55, which indicates moderate symptoms. It is clear from the record that the ALJ considered all of the medical evidence in rating the severity of plaintiff's depression and that his step 3 finding is supported by that medical evidence.

Moreover, plaintiff has failed to meet his burden of presenting any medical findings to either the ALJ or to this court showing that any of his impairments, alone or in combination, meet or equal any listed impairment. See Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992). To the contrary, the medical evidence of record does not support a finding that plaintiff meets or equals any listing. Accordingly, the court finds plaintiff's challenge to the ALJ's step 3 finding to be without merit.

Plaintiff's remaining arguments relate to the ALJ's finding of not disabled at step 5 of the sequential evaluation process. At that step, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with his medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §§404.1520(f) and 416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §§404.1545(a) and 416.945(a); Fargnoli, 247 F.3d at 40.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform light work with several restrictions accommodating his impairments. (R. 14). Although plaintiff disputes this finding, it is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence, including the opinions of plaintiff's treating physician, Dr. Shoenthal, as well as the state agency medical consultant. (R. 14-16). The court is satisfied that the ALJ's residual functional capacity finding is supported by substantial evidence.

Although plaintiff now contends that the ALJ failed to inquire of the vocational expert regarding "the time on task required to perform the jobs listed" or regarding "absences

permitted," there simply is nothing in the record that would support any sort of limitations in this regard. Plaintiff's counsel at the administrative hearing did not ask any questions regarding time-on-task or permissible absences, nor has plaintiff's current counsel on appeal pointed to any objective evidence in the record that would support any sort of restrictions in these areas. The court has reviewed the record and has found nothing to support any additional restrictions beyond those found by the ALJ in his residual functional capacity.

Plaintiff's final argument is that the ALJ failed to consider the combined effects of all of plaintiff's medical conditions, both severe and non-severe, in assessing plaintiff's residual functional capacity. However, the record fails to support that position. The ALJ specifically noted in his decision that he "considered all symptoms" in assessing plaintiff's residual functional capacity, and his findings demonstrate that he did just that. (R. 12-16). The court is satisfied that the ALJ took into consideration all of the medically supportable limitations arising from all of plaintiff's impairments, in combination, and that the ALJ's residual functional capacity assessment is supported by substantial evidence.

Finally, to the extent that plaintiff contends that the ALJ failed to consider the effect that migraine headaches have on plaintiff's ability to work, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's

ability to perform substantial gainful activity, and a mere diagnosis is insufficient to support a finding of disability. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Here, although Dr. Lukacs diagnosed plaintiff with migraines, plaintiff has not suggested any additional restrictions arising from those migraines that would be more limiting than those already accounted for in the ALJ's residual functional capacity finding. The court is satisfied that the ALJ adequately considered plaintiff's migraines, along with all of plaintiff's other symptoms and impairments, in arriving at his residual functional capacity finding.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

*Gustave Diamond*
Gustave Diamond
United States District Judge

cc: J. Kirk Kling, Esq.
630 Pleasant Valley Boulevard, Suite B
Altoona, PA 16602

Stephanie L. Haines
Assistant U.S. Attorney
319 Washington Street
Room 224, Penn Traffic Building
Johnstown, PA 15901